Allen, P.
It was settled at an early period in England, that as to wills of personalty, marriage and the birth of a child for whom no provision was thereby made, operated as an implied revocation. Lugg v. Lugg, *334 2 Salk. R. 592. As to realty, it was determined in Spraage v. Stone, Amb. R. 721, and Christopher v. Christopher, Dickens’ R. 445, “ that revocations by operation of law did not fall within the statute of frauds. The rule established by these decisions was adopted in this court in Wilcox v. Rootes, 1 Wash. 140. The principle on which these implied revocations rested has been controverted. On the one hand the revocation was grounded on the implied intention to revoke under the new circumstances occurring after the will was made. On the other hand, in the case of Doe v. Lancashire, 5 T. R. 49, Lord Kenyon held that such implied revocations were dependent on a condition annexed to the will by law, under which it would fail of effect in case of a subsequent marriage and birth of issue who would be left without provision were the will allowed to be effectual: and such was held to be the true view of such revocations in Marston v. Roe, 35 Eng. C. L. R. 303, where it was held that the revocation under such circumstances is in consequence of a rule of law, independent of any intention. The Court of appeals, in Wilcox v. Rootes, 1 Wash. 140, seemed to i-est the principle of such implied revocation upon the implied intention to revoke under the new state of circumstances, and as a consequence that parol evidence was admissible to rebut such intention. It is remarked by the author, in 3 Lomax Dig. 131, that when we consider the provision made by our law for children pretermitted, or born after the will, or posthumous, and besides the provision of dower for the wife, in the real estate, legal or equitable, her rights as distributee, of which no testamentary act can deprive her, for she may renounce the provision made for her by the will, there would seem to be less ground in Virginia than in England for the rule that marriage and birth of a child should revoke a will made prior to the marriage.
*335 In England these questions have been set at rest by the statute of 1 Victoria, which provides that every will made by a man or woman shall be revoked by his or her marriage (except a will made in the exercise of a power of appointment, &c.) Under this statute, Jarman says, vol. 1, p. 114, that “ marriage alone will produce absolute and complete revocation as to both real and personal estate, and that no declaration, however explicit and earnest of the testator’s wish that the will should continue in force after marriage, still less any inference of intention drawn from the contents of the will, and, least of all, evidence collected aliunde, will prevent the revocation.” With this statute before the revisors, and with direct reference to it, they reported the 7th section of chap. 122 of the Code, page 517. The terms are too clear to admit of doubt, if they are to be construed literally. The statute of Victoria was understood by the commentator to be free from difficulty, and it is admitted that in England it must be taken literally to effectuate the intention of the legislature. Ours is a literal copy; and why should it not receive the same construction? It lays down a plain rule; it makes one exception; and from what source can the courts derive any authority to make another? Our statute has received the same construction by Lomax, 3d vol. of his Digest, p. 148, which has been put upon the English statute, and which it is conceded it must there receive. It is argued, however, that where the interests of the new parties brought by the marriage into close relation with the testator are in no wise affected by the will, the reason for such revocation ceases, and therefore the law should not apply. If this position could be maintained, it would result in a repeal of this 7th section of our statute; for in view of the provision of dower for the wife in the realty, her paramount right to her portion of the personalty, independent of any testamentary disposition, if she chooses to renounce the *336 provision made for her in the will; and in view of the provisions made by the Code, ch. 122, § 17, 18, p. 618, in favor of the children of the testator pretermitted, or born after the will, or posthumous, the rights growing out of this new relation are sufficiently protected, and therefore there was no necessity for such implied revocation. This might have been an argument against incorporating the provision contained in the statute of Victoria into our Code; but when it has been so incorporated, it is not for the court to say that the legislature did not mean precisely what they have said. They may have thought that as marriage is the most important step a man can take, gives rise to new duties, brings into close connection new parties, and of necessity calls for a different arrangement of his property, it should, without reference to the provision made by law for these new parties, lead to new arrangements in regard to his property. Nor is the provision made by the law precisely the same which follows upon intestacy, or which it is presumable the testator would have made by his will. The 18th section of chap. 122 provides, that if the after-born child or descendant die under age, unmarried and without issue, his portion of the estate, or so much as may remain unexpended in his support and education, shall revert to the person to whom it was given by the will. By the 3d section of the same chapter, minors eighteen years or upwards may by will dispose of personal estate. The wife of a minor would be entitled to dower in his real estate, and her interest in his personal estate; and his estate, in case of his death under age intestate, would descend and pass according to the statute of descents and distributions. Whereas by the 17th section, the will is to be construed as if the devises and bequests therein had been limited to take effect in the event the after-born child should die under the age of twenty-one years, unmarried and without issue; and by the 18th section, if the pretermitted *337 child dies as aforesaid, his portion reverts to the person to whom it was given by will. The interests, therefore, of such issue are materially affected by the previous will. Again, we have seen that in Virginia in the case of Wilcox v. Rootes, ubi supra, and also in Yerby v. Yerby, 3 Call 28, the court considered that such revocation was grounded on the implied intention of the testator to revoke under the new state of circumstances, and upon such intention only. To rebut such presumed intention to revoke, any evidence is admissible in support of the will to show a contrary intention, 3 Lomax Dig. 129: thus letting in evidence of circumstances and of the parol declarations of the testator. The evils resulting from this practice have led the English courts to refer the revocation to a condition in law attached to the will so as to exclude such parol testimony of the declarations.
This conflict of decision and the evils arising from letting in parol testimony in such cases, so much against the policy of our legislation and the current of decisions in later times, upon the subject of wills, may have had some influence in inducing the legislature, by adopting the provision of the statute of Victoria, to put to rest all questions as to implied revocations by marriage and the birth of issue. They have done so by declaring that marriage alone, save in the excepted cases, shall be an absolute revocation.
I think the Circuit court properly held, that notwithstanding the deed of marriage settlement, by reason of the marriage the paper writing offered for probate was fully and completely revoked; and that the sentence should be affirmed.
The other judges concurred in the opinion of Allen, P.
Sentence affirmed.